## UNITED STATES DISTRICT COURT
## FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| **ALBERT DIAZ, JR.,** | : | **Civil No. 1:18-CV-1896** |
| | : | |
| **Plaintiff,** | : | |
| | : | |
| **v.** | : | |
| | : | **(Magistrate Judge Carlson)** |
| **NANCY BERRYHILL,** | : | |
| **Acting Commissioner of Social** | : | |
| **Security,** | : | |
| | : | |
| **Defendant.** | : | |

## MEMORANDUM OPINION

## I.     Introduction

In the case of Albert Diaz we most assuredly do not write upon a blank slate. Quite the contrary, Albert Diaz suffered what was undeniably a disabling injury 11 years ago in May of 2008. Despite this decade-old disabling injury, this is Diaz's third appeal of an adverse Social Security disability ruling over the past ten years. It is undisputed that each of the three prior decisions made by the ALJs who evaluated Diaz's case—including the decision that is currently on appeal—contained material errors. Indeed, to its credit, the  Office of the Commissioner concedes error in this appeal.

It is also undisputed that Diaz's spinal and neurological impairments are severe, and were totally disabling for a period of many years, from 2008 through

1

2012. Furthermore, there is no dispute that it took more than ten years from the date of the onset of Diaz's disability for an Administrative Law Judge (ALJ) to finally recognize the partially disabling impact of these injuries in July of 2018. Yet, even as it was acknowledged that Diaz suffered disabling injuries for many years, the plaintiff was denied disability benefits after March 2012 in an ALJ decision which found that in the span of a single month the plaintiff went from *per se* disabled to capable of performing sedentary work. In reaching this latest decision, the ALJ rejected a 2015 treating source opinion which found that Diaz remained disabled after 2012, erroneously ignoring that opinion based upon an incorrect view regarding Diaz's date last insured. The ALJ also fashioned a residual functional capacity (RFC) assessment for Diaz which was unsupported by any competent medical opinion evidence, and was contradicted by both lay testimony and clinical evidence, as well as by multiple medical opinions from treating and examining sources.

Commendably, the Commissioner concedes error in this latest July 2018 ALJ decision, but citing the deference owed to administrative agency determinations, recommends that we remand this case for what would be the fourth ALJ hearing of Diaz's decade-spanning disability claim. Diaz  urges us to follow a different path, one which places a greater value on finality and fairness than upon administrative agency deference, and exercise our legal authority to award benefits in this case.

Upon careful consideration of the parties' competing positions, we conclude that it is now time for this painfully prolonged litigation to draw to a close. Finding that the exacting requirements set by law for an award of benefits are met under the extraordinary circumstances of this case, for the reasons set forth below, it is ordered that judgment is entered in favor of the plaintiff and the Commissioner is directed to award benefits in this case.

## II.     Statement of Facts and of the Case

This legal saga began more than 11 years ago, in May of 2008. At that time Albert Diaz had a steady employment history working in building maintenance for approximately 8 years. (Tr. 113-14.) "On May 8, 2008, when Mr. Diaz was thirty-nine years old, he fell approximately four feet down an elevator shaft while engaging in his duties as a maintenance director and maintenance worker." Diaz v. Colvin, No. 4:16-CV-00358, 2017 WL 1078229, at *2 (M.D. Pa. Mar. 22, 2017).

It is now entirely undisputed that Diaz suffered severe spinal, elbow, wrist and neurological impairments as a result of this fall. These impairments have left Diaz in intractable pain and multiple medical sources have found over the past decade that these impairments were completely disabling. Indeed, it is now conceded that Diaz was totally and completely disabled for at least four years in the immediate aftermath of this May 2008 fall. On July 18, 2018, an ALJ concluded that Diaz's severe

impairments met the requirements of Listing 1.04,[1] and found him to be *per se*

disabled from May 2008 through March 2012. (Tr. 1307-33.) Yet, even as the ALJ

conceded in July 2018 that Diaz had become disabled more than a decade earlier,

the ALJ also found that Diaz had regained the capacity to perform a limited range of

---

[1]Listing 1.04 provides that persons suffering from the following constellation of spinal; disorders are per se disabled.

1.04 Disorders of the spine (e.g., herniated nucleus pulposus, spinal arachnoiditis, spinal stenosis, osteoarthritis, degenerative disc disease, facet arthritis, vertebral fracture), resulting in compromise of a nerve root (including the cauda equina) or the spinal cord. With:

A. Evidence of nerve root compression characterized by neuro-anatomic distribution of pain, limitation of motion of the spine, motor loss (atrophy with associated muscle weakness or muscle weakness) accompanied by sensory or reflex loss and, if there is involvement of the lower back, positive straight-leg raising test (sitting and supine);
or
B. Spinal arachnoiditis, confirmed by an operative note or pathology report of tissue biopsy, or by appropriate medically acceptable imaging, manifested by severe burning or painful dysesthesia, resulting in the need for changes in position or posture more than once every 2 hours;
or
C. Lumbar spinal stenosis resulting in pseudoclaudication, established by findings on appropriate medically acceptable imaging, manifested by chronic nonradicular pain and weakness, and resulting in inability to ambulate effectively, as defined in 1.00B2b.

20 C.F.R. § Pt. 404, Subpt. P, App. 1

sedentary work in March of 2012, a decision denying continuing benefits to Diaz which the Commissioner now concedes was flawed in basic and fundamental ways.

The tortured and protracted administrative history which led in July of 2018 to a decision which conceded Diaz's disability for a closed period while denying him disability benefits for the past six years began on April 19, 2010, approximately two years after Diaz suffered this injury, when the plaintiff filed his initial application for disability benefits based upon his spinal and neurological impairments. (Tr. 104-5.) Having applied for these benefits, Diaz waited more than a year before he received an ALJ hearing on this claim on October 5, 2011. (Tr. 40-67.) Two months later, on December 21, 2011 Diaz's claim was denied by an ALJ. (Tr. 7-19.)

At this juncture Diaz's agency proceedings had been pending for approximately 20 months, and he had been enduring the disabling symptoms of his May 2008 injury for more than 40 months. Diaz appealed this adverse decision to the Social Security Appeals Council. He was then compelled to wait another 20 months before his administrative appeal was denied on June 25, 2013. (Tr. 1-5.)

Diaz then lodged his first appeal with this court in August of 2013. Diaz v. Colvin, No.1:13-CV-2242. On August 12, 2014, it was recommended that this case be remanded for further consideration by the Commissioner, a recommendation that

the Commissioner did not dispute. <u>Diaz v. Colvin</u>, No.1:13-CV-2242 (Docs. 15 and 16.) On August 27, 2014, six years after Diaz's injury and four years after he first filed for disability benefits, this court remanded this case to the Commissioner with instructions to further evaluate Diaz's claim. <u>Diaz v. Colvin</u>, No.1:13-CV-2242 (Doc. 17.)

Another ten months then passed before Diaz received his second disability hearing before an ALJ on June 30, 2015. (Tr. 649-69.) Following that hearing, on December 16, 2015, the ALJ entered an opinion once again denying Diaz's claim for benefits. (Tr. 585-628.) At this juncture, Diaz's disability application had been pending for more than 5 years and he had suffered with these spinal and neurological impairments for 7 years.

Diaz pursued his second appeal to this court on February 27, 2016. <u>Diaz v. Colvin</u>, No.4:16-CV-358. On March 22, 2017, we vacated this second decision by the Commissioner and remanded this case for further proceedings. <u>Diaz v. Colvin</u>, No.4:16-CV-358 (Doc. 24.) This second decision by the court noted the prolonged delay which had taken place in this litigation observing that: "Mr. Diaz's claim navigated through a complex procedural labyrinth, where it has been denied and remanded due to multiple defects before it arrived before us in the instant matter." <u>Diaz v. Colvin</u>, No. 4:16-CV-00358, 2017 WL 1078229, at *1 (M.D. Pa. Mar. 22,

2017). The district court also acknowledged that it had the discretion to order an award of benefits at this juncture given this protracted delay, id. at *1, n.1, but gave deference to the agency's request for a remand in lieu of any award of benefits. Id. However, in choosing this course the court specifically "recommend[ed] that, because Mr. Diaz's application for benefits has been pending for almost seven years, the Commissioner schedule an expedited hearing within 120 days of the Court's Order and promptly issue a revised decision." Id. At the time of this ruling, Diaz had suffered from the disabling effects of his May 2008 injuries for nearly 9 years, and his disability application had been pending for nearly 7 years.

Despite the court's March 2017 recommendation that this matter be set for an expedited hearing within 120 days, and a prompt decision, another 16 months elapsed before the ALJ issued the third decision in this case, on July 18, 2018. (Tr. 1307-33.) This decision was issued nearly one year after a hearing on Diaz's disability application which took place on August 24, 2017. (Tr. 1346-1422.)

In that July 2018 decision the ALJ acknowledged that Diaz had, in fact, been disabled a decade earlier in May of 2008 when he fell down an open elevator shaft. (Tr. 1307-33.) The ALJ also conceded that Diaz remained disabled until March of 2012, but denied his claim after March of 2012 reasoning that his condition had

improved sufficiently after that date to allow him to perform a limited range of sedentary work. (Id.)

In reaching this result, the ALJ rejected a March 2015 medical opinion of Diaz's long-time treating physician, Dr. Rubinfeld, who stated that Diaz remained totally disabled after March of 2012 due to his persistent profound pain, and the frequent episodes of palsy caused by treatment of his neurological conditions. (Tr. 1119-22.) According to the ALJ Dr. Rubinfeld's March 2015 was entitled to "no weight." (Tr. 1330.) The ALJ rejected this 2015 medical opinion from Dr. Rubinfeld, even though the ALJ had previously concluded that prior, essentially identical medical opinions from Dr. Rubinfeld, issued in November 2011 and January 2012 were entitled to "great weight," (Tr. 1321), and formed a significant part of the evidence which led the ALJ to announce that Diaz had been *per se* disabled from 2008 through March 2012. (Id.) In large measure, the ALJ justified this seemingly inconsistent approach to evaluating the opinions of this longstanding treating source by insisting that Dr. Rubinfeld's March 2015 opinion was issued after Diaz's date last insured, December 2013, and therefore was of no value whatsoever. (Tr. 1316, 1330.)

This finding was simply wrong. It is now conceded by all parties that the Diaz's date last insured is actually in 2017, two years *after* Dr. Rubinfeld opined in March of 2015 that Diaz remained completely disabled.

Nonetheless having rejected the March 2015 opinion of a treating source that the ALJ had previously defined as a source entitled to great weight for what was undeniably the wrong reason, the ALJ went on to conclude that Diaz could perform a limited range of sedentary work. (Tr. 1324-5.) No medical opinion supported the RFC assessment arrived at by the ALJ and multiple medical opinions from treating and examining sources, both preceding and following the March 2012 date when the ALJ found that Diaz regained the capacity for work, directly contradicted this finding. Thus, in arriving at the decision that Diaz could perform sedentary work after March of 2012, the ALJ cited to no medical opinion evidence. Instead the ALJ was compelled to either reject or distinguish the opinions of multiple medical sources, who found that Diaz was either completely or significantly disabled.

In some instances the ALJ justified this decision by asserting that the doctors' opinions pre-dated March 2012, the date when the ALJ deemed that Diaz's condition had improved to a degree that allowed him to work.[2] In other instances, such as when

---

[2] For example, the ALJ gave great weight to Dr. Vessa's opinions that Diaz was totally disabled from March through May 2009, but afforded this opinion no significance in assessing Diaz's on-going disability. (Tr. 1329.) Further, the ALJ

a treating source like Dr. Rubinfeld opined that Diaz was disabled both before and after March of 2012, the ALJ chose the give great weight to the earlier opinions but erroneously concluded that this treating doctor's March 2015 opinion was entitled to no weight. (Tr. 1321, 1330.)

In still other instances, the ALJ was presented with numerous consultative examining expert opinions, all of which post-dated March of 2012 and all of which reflected findings of full or partial disability on Diaz's part after March of 2012. For example, in July of 2012, Dr. Angela Adams opined that Diaz was experiencing a 50% disability due his spinal and neurological problems, a degree of disability which presented an exacerbation of his previous issues. (Tr. 1697.) Dr. Adams further opined that Diaz suffered from a 40% disability due to an elbow injury and neurological complications from that injury. (Tr. 1698.) Dr. Adams also opined that Diaz had a 30% partial permanent emotional disability due to the anxiety and depression caused by the chronic physical impairments. (Id.)

Three months later, in October of 2012, Dr. Cyrus Vosough, also submitted a medical opinion letter confirming that Diaz suffered from on-going and significant

---

gave great weight to the multiple medical opinions issued by Dr. Nachwalter, a treating physician, between May of 2009 and 2010, but again afforded those treating source opinions no weight when considering Diaz's condition after March 2012. (Id.)

disabilities. (Tr. 1687-1690.) According to Dr. Vosough, Diaz was 70% disabled due to his back injuries, 55% disabled due to his elbow injuries, and 37 ½% disabled as a result of right wrist injuries. (Id.)

On December 4, 2013, a consulting, examining physician, Dr. Thomas McLaughlin, further documented the on-going and profound nature of Diaz's physical impairments. (Tr. 1017-31.) According to Dr. McLaughlin, Diaz was never able to engage in any lifting or carrying, could sit or walk for no more than 10 minutes at a time, required the use of a cane to ambulate, and could never use his dominant right hand to reach, lift, handle, finger, feel or pull. (Id.)

Finally, in January of 2014, Tiffany Griffith, Psych. D., opined that Diaz faced a series of moderate mental and emotional impairments due to the chronic anxiety and depression with accompanied his on-going physical and neurological impairments. (Tr. 1032-39.)

Presented with this substantial array of medical opinions, all of which confirmed the treating source opinion that Diaz remained totally disabled after March of 2012, the ALJ elected to afford all of these opinions "little weight" in this disability assessment. (Tr. 1330-31.) The ALJ also gave "little weight" to the testimony and statements provided by Diaz's spouse. (Tr. 1328-9.) Even though her description of Diaz's limitations and impairments was based upon years of direct

observation and was entirely consistent with this body of medical opinion and treating source evidence, the ALJ concluded that her familial attachment to Diaz undermined the weight to be given to her testimony. (Id.)

The principal basis given by the ALJ for rejecting this substantial body of lay testimony and treating and consulting source opinion evidence was the ALJ's conclusion that "Dr. Rubinfeld's treatment records revealed from March 2012 to December 2013, the physical examination findings were essentially within normal limits." (Tr. 1326.) It is difficult to see how the ALJ reached this conclusion that the treatment records revealed essentially normal results. Rather, those records described Diaz's back pain as a recurring problem; characterized the severity of this pain as ranging between moderate, moderate-to-severe, and severe; and assessed Diaz's functional impairment as falling between moderate and severe. (Tr. 1060-1117.) In short, nothing about these treatment records seemed to be normal. Rather they reflected a chronic level of impairment that varied between moderate and severe. These findings, in turn, were consistent with Dr. Rubinfeld's treatment notes, which also documented Diaz's on-going severe spinal pain. (Tr.1577-1658.) Furthermore, these clinical records corroborated Dr. Rubinfeld's numerous notations between 2014 and 2016 that Diaz was not able to return to work. (Tr. 1659-79.)

Given this admittedly flawed analysis, the ALJ concluded that Diaz retained the ability to perform a limited range of sedentary work. Based upon this conclusion, the ALJ then found at Step 5 of this sequential analysis that Diaz's disability ended in March of 2012, and denied his claim for continuing benefits after that date. (Tr. 1330-33.) At the time that the ALJ issued this decision in July of 2018 denying Diaz's right to benefits after March of 2012, Diaz's medical impairments had persisted for more than a decade, and Diaz had been litigating his entitlement to disability benefits for more than 8 years.

This third disability appeal then followed. (Doc. 1.) While the Commissioner initially endeavored to defend this July 2018 ALJ decision, (Doc. 19), upon reflection the Commissioner now agrees at a minimum that the ALJ erred in discounting Dr. Rubinfeld's opinions based upon an incorrect assumption regarding Diaz's date last insured. Accordingly, the Commissioner concedes error and asks us to remand this case for what would be the fourth administrative decision in this case. (Doc. 21.) For his part, Diaz urges us to order an award of benefits in this case, arguing that the record developed over the past decade is complete and supports an award of benefits in this case.

This appeal is fully briefed by the parties and at the plaintiff's request was the subject of an oral argument conducted on June 28, 2019. Accordingly, this case is now ripe for resolution.

For the reasons set forth below, we conclude that it is now time to write the final chapter in this legal saga. Accordingly, as discussed below, we will order that the decision of the Commissioner be reversed in this case, and that benefits be awarded to the plaintiff.

## III. <u>Discussion</u>

### A. <u>Legal Standards Governing Decisions to Remand or Award Benefits in Social Security Appeals.</u>

The decision before us is both narrow and vitally important. As a result of the prior litigation in this case spanning the past decade there is much upon which the parties agree. First, it is undisputed now that Albert Diaz's initial disability application had some merit, since Diaz has been found to have met the exacting standard for disability from May 8, 2008 through March 14, 2012. Thus, the only remaining issue in this litigation relates to whether Diaz suffered from a continuing disability after March 2012. As to this remaining issue there is a further consensus among the parties that the decision of the ALJ denying Diaz benefits after March 2012 is fatally flawed and now must be set aside. Therefore, the principal remaining

area of dispute relates to the question of what is the appropriate remedy to cure this third, undeniably flawed decision by an ALJ in Diaz's case.

On this issue the parties advance starkly contrasting positions. The Commissioner concedes error in this case, but urges us to simply remand this erroneous decision for a fourth consideration by an ALJ. Decrying the decade of delay which has already transpired here, and demanding a more immediate form of relief, Diaz urges us to order an award of benefits in this case.

In considering these competing invitations regarding the course we should follow to remedy this latest, and admittedly flawed, ALJ ruling, we begin as we must with the language of the statute itself. Section 405(g) of Title 42, United States Code, defines the role of the court in reviewing Social Security disability determinations and provides that: "The court shall have power to enter, upon the pleadings and transcript of the record, a judgment affirming, modifying, or reversing the decision of the Commissioner of Social Security, with or without remanding the cause for a rehearing." 42 U.S.C. § 405 (g).

Oftentimes the remedy prescribed by the court is the relief sought here by the Commissioner: a remand for further proceedings. Such relief is specifically authorized by statute, and given the deference owed to administrative agency decisions, is often appropriate. However, as the plain language of §405(g) indicates,

we are not limited to ordering a remand for further proceedings. Instead "[w]hen reversing the SSA's decision under 42 U.S.C. § 405(g), this Court 'may choose to remand to the Secretary for a further hearing or simply . . . award benefits.' Podedworny v. Harris, 745 F.2d 210, 221 (3d Cir.1984)." Brownawell v. Comm'r Of Soc. Sec., 554 F.3d 352, 357–58 (3d Cir. 2008).

While this judgment concerning the proper form of relief in a Social Security appeal rests in the court's sound discretion, Podedworny v. Harris, 745 F.2d 210, 221 (3d Cir. 1984), the exercise of our discretion in this field is guided by certain basic principles. As the court of appeals has explained:

> The decision to direct the district court to award benefits should be made only when the administrative record of the case has been fully developed and when substantial evidence on the record as a whole indicates that the claimant is disabled and entitled to benefits. Tennant v. Schweiker, 682 F.2d 707, 710 (8th Cir.1982); Lewin v. Schweiker, 654 F.2d 631, 635 (9th Cir.1981). See Parsons v. Heckler, 739 F.2d 1334 at 1341 (8th Cir.1984); Smith v. Heckler, 735 F.2d 312, 318 (8th Cir.1984); Baugus v. Secretary of Health and Human Services, 717 F.2d 443, 448 (8th Cir.1983); Rini v. Harris, 615 F.2d 625, 627 (5th Cir.1980); Gold v. Secretary of H.E.W., 463 F.2d 38, 44 (2d Cir.1972). When faced with such cases, it is unreasonable for a court to give the ALJ another opportunity to consider new evidence concerning the disability because the administrative proceeding would result only in further delay in the receipt of benefits

Podedworny v. Harris, 745 F.2d 210, 221–22 (3d Cir. 1984).

Thus, in practice any decision to award benefits in lieu of ordering a remand for further agency consideration entails the weighing of two factors: First, whether there

has been an excessive delay in the litigation of the claim which is not attributable to the claimant; and second, whether the administrative record of the case has been fully developed and substantial evidence on the record as a whole indicates that the claimant is disabled and entitled to benefits.

With respect to this first consideration, undue delay, courts measure this delay both in terms of the passage of years and by reference to whether there have been prior appeals and remands. Applying these temporal benchmarks, courts have found that administrative delays of five years or more in cases involving one or two prior remands have constituted excessive delays triggering consideration of an award of benefits in lieu of a remand. See e.g., Brownawell v. Comm'r Of Soc. Sec., 554 F.3d 352, 358 (3d Cir. 2008)(8 years delay, and 2 prior remands, benefits awarded);Morales v. Apfel, 225 F.3d 310, 320 (3d Cir. 2000)(award of benefits ordered after 10 years and two appeals); Woody v. Sec'y of Health & Human Servs., 859 F.2d 1156, 1162 (3d Cir. 1988)(eight years of administrative and judicial proceedings, benefits awarded); Podedworny v. Harris, supra (award of benefits after two appeals, 5 ½ years of delay); Halloran v. Berryhill, 290 F. Supp. 3d 307, 321 (M.D. Pa. 2017)(4 year delay, benefits awarded); Nance v. Barnhart, 194 F. Supp. 2d 302, 322 (D. Del. 2002)( 7 years of delay in processing first appeal, benefits

awarded); Schonewolf v. Callahan, 972 F. Supp. 277, 290 (D.N.J. 1997) (6 years of delay, 2 prior remands, benefits awarded).

As for the second benchmark standard we must consider, which examines the underlying merits of the plaintiff's claim, there are two components to this merits assessment. "The district court can award benefits only when [first] the administrative record of the case has been fully developed and [second] when substantial evidence on the record as a whole indicates that the plaintiff is disabled and entitled to benefits. Gilliland v. Heckler, 786 F.2d 178 (3d Cir.1986); Tennant v. Schweiker, 682 F.2d 707, 710 (8th Cir.1982)." Eberhart v. Massanari, 172 F. Supp. 2d 589, 599 (M.D. Pa. 2001). These requirements are met whenever the court finds the record to be "extensive and well developed." Id. Likewise these elements are satisfied if the court concludes that the medical opinion evidence in a case has been fully developed. Brownawell v. Comm'r Of Soc. Sec., 554 F.3d 352, 358 (3d Cir. 2008). An award of benefits is also proper when the "extensive medical record, wrongly rejected by the ALJ, is substantial evidence that [a claimant is disabled]," Morales v. Apfel, 225 F.3d 310, 320 (3d Cir. 2000), or when treatment records, coupled with a treating source's opinions over several years, indicates that the plaintiff is unable to maintain a normal, regular work schedule. Nance v. Barnhart, 194 F. Supp. 2d 302, 322 (D. Del. 2002).

Finally, any evaluation of whether substantial evidence on the record as a whole indicates that the plaintiff is disabled and entitled to benefits should also take into account the procedural posture of a case, and particularly which party bears the burden of proof and production on issues of disability. This can be a particularly significant consideration in a case such as this where the ALJ awarded a period of disability benefits to the plaintiff but then concluded at Step 5 of the sequential analysis that applies to these cases that the plaintiff no longer suffered from a continuing disability. In this factual setting, there are two burdens of proof and persuasion that seem to rest with the Commissioner. First, as a general rule, it is well-settled that, while at steps one through four, the claimant bears the initial burden of proof, <u>Mason v. Shalala</u>, 994 F.2d 1058, 1064 (3d Cir. 1993), once this burden has been met, it shifts to the Commissioner at step five to show that jobs exist in significant number in the national economy that the claimant could perform that are consistent with the claimant's age, education, work experience and RFC. <u>Mason</u>, 994 F.2d at 1064.

Likewise, when we are evaluating the Commissioner's determination that someone who was once found to be disabled no longer suffers from a continuing disability, we do so under a paradigm which includes shifting burdens of production and proof. In assessing continuing disability claims, the plaintiff bears some initial

burden of production and persuasion. "[O]rdinarily a disability beneficiary meets his or her burden to prove continuing disability by introducing evidence that the underlying condition continues, which in turn gives rise to a presumption of continuing disability." Kuzmin v. Schweiker, 714 F.2d 1233, 1238 (3d Cir. 1983). "Once the burden to come forward has shifted to the Secretary, the Secretary must present evidence that there has been sufficient improvement in the claimant's condition to allow the claimant to undertake gainful activity" or show that the initial disability determination was made in error. Kuzmin v. Schweiker, 714 F.2d 1233, 1237 (3d Cir. 1983). "Thus, once the claimant produces evidence of continuing disability, the burden of proof, or more properly the risk of non-persuasion, shifts to the Secretary to produce evidence that the claimant is capable of undertaking gainful activity in order to rebut the presumption of continuing disability." Keegan v. Heckler, 744 F.2d 972, 975 (3d Cir. 1984).

These are the legal cairns, or landmarks, that guide us as we choose between the divergent paths urged upon us by the parties and write the final chapter in this legal saga.

**B.**     <u>An Award of Benefits is Appropriate in this Case</u>

An award of benefits is now appropriate here.

We do not reach this decision lightly. Rather, our judgment regarding the future course of this litigation is formed, and informed, by the past history of this case, a history marked by prolonged delays coupled with repeatedly flawed analysis of a claim which draws substantial support from the administrative record. Moreover, in reaching this conclusion we are guided by the legal standards defined for us by the courts.

Those standards call upon us to first evaluate whether there has been an excessive delay in the litigation of Diaz's claim which is not attributable to the claimant. We find that this case has been plagued by excessive delay. In reaching this conclusion we are mindful that courts have found administrative delays of five years or more in cases involving one or two prior remands have constituted excessive delays triggering consideration of an award of benefits in lieu of a remand. <u>See e.g.</u>, <u>Brownawell v. Comm'r Of Soc. Sec.</u>, 554 F.3d 352, 358 (3d Cir. 2008)(8 years delay, and 2 prior remands, benefits awarded); <u>Morales v. Apfel</u>, 225 F.3d 310, 320 (3d Cir. 2000)(award of benefits ordered after 10 years and two appeals); W<u>oody v. Sec'y of Health & Human Servs.</u>, 859 F.2d 1156, 1162 (3d Cir. 1988)(eight years of administrative and judicial proceedings, benefits awarded); <u>Podedworny v. Harris</u>,

supra (award of benefits after two appeals, 5 ½ years of delay); Halloran v. Berryhill, 290 F. Supp. 3d 307, 321 (M.D. Pa. 2017)(4 year delay, benefits awarded); Nance v. Barnhart, 194 F. Supp. 2d 302, 322 (D. Del. 2002)( 7 years of delay in processing first appeal, benefits awarded); Schonewolf v. Callahan, 972 F. Supp. 277, 290 (D.N.J. 1997) (6 years of delay, 2 prior remands, benefits awarded).

The delays experienced here to date far exceed those previously found to have been excessive both in terms of the overall duration of this delay, and the number of instances in which the courts have been compelled to set aside flawed ALJ decisions. Presently some 4,072 days, or more than 11 years, have elapsed since Diaz first experienced the onset of his disability on May 8, 2008. Some 3,364 days, or more than 9 years, have passed since Diaz began the formal process of seeking these disability benefits on April 16, 2010. Yet, despite the passage of a decade in which Diaz has experienced significant disabilities, material aspects of this claim still remain unresolved.

Furthermore, the painfully protracted history of this litigation has been marked by no less than three ALJ decisions, each of which was flawed in ways which have compelled the courts to vacate these administrative judgments. Indeed, if we acceded to the Commissioner's suggestion and remanded this case we would be setting the stage for an extraordinary, fourth administrative decision in this case.

This remand history is unprecedented and exceeds the record of remands that have previously been deemed excessive by the courts. <u>Brownawell v. Comm'r Of Soc. Sec.</u>, 554 F.3d 352, 358 (3d Cir. 2008)(8 years delay, and 2 prior remands, benefits awarded);<u>Morales v. Apfel</u>, 225 F.3d 310, 320 (3d Cir. 2000)(award of benefits ordered after 10 years and two appeals); <u>Woody v. Sec'y of Health & Human Servs.</u>, 859 F.2d 1156, 1162 (3d Cir. 1988)(eight years of administrative and judicial proceedings, benefits awarded); <u>Podedworny v. Harris</u>, <u>supra</u> (award of benefits after two appeals, 5 ½ years of delay).

Moreover, using the past as a harbinger of the future, it is evident that the remand order sought by the Commissioner may well spawn years of additional delay in this protracted litigation. The chronology of this case presents a cautionary parable of the prejudice which can flow from administrative delay. It is now conceded that Albert Diaz suffered disabling injuries in May of 2008. Diaz commenced this litigation on April 16, 2010 when he filed for disability benefits. That claim was administratively denied in September of 2010, and Diaz sought review of that denial decision.

Diaz had to wait more than a year before he received an ALJ hearing on this claim in October of 2011. His claim was then denied for the first time by an ALJ in December of 2011, some 20 months after he began this administrative process. Diaz

appealed this ruling to the Appeals Council but was compelled to wait another 20 months before his administrative appeal was denied in July of 2013.

Diaz then lodged his first appeal with this court in August of 2013. <u>Diaz v. Colvin</u>, No.1:13-CV-2242. On August 12, 2014, it was recommended that this case be remanded for further consideration by the Commissioner, a recommendation that the Commissioner did not dispute. <u>Diaz v. Colvin</u>, No.1:13-CV-2242 (Docs. 15 and 16.) On August 27, 2014, six years after Diaz's injury and four years after he first filed for disability benefits, this court remanded this case to the Commissioner with instructions to further evaluate Diaz's claim. <u>Diaz v. Colvin</u>, No.1:13-CV-2242 (Doc. 17.)

Another ten months then passed before Diaz received his second disability hearing before an ALJ on June 30, 2015. Following that hearing, on December 16, 2015, the ALJ entered an opinion once again denying Diaz's claim for benefits. Diaz then pursued his second appeal to this court on February 27, 2016. <u>Diaz v. Colvin</u>, No.4:16-CV-358. On March 22, 2017, we vacated this second decision by the Commissioner and remanded this case for further proceedings. <u>Diaz v. Colvin</u>, No.4:16-CV-358 (Doc. 24.) This second decision by the court noted the prolonged delay which had taken place in this litigation observing that: Mr. Diaz's claim "navigated through a complex procedural labyrinth, where it has been denied and

remanded due to multiple defects before it arrived before us in the instant matter." Id. at 2-3. In recognition of this protracted delay, the court specifically "recommend[ed] that, because Mr. Diaz's application for benefits has been pending for almost seven years, the Commissioner schedule an expedited hearing within 120 days of the Court's Order and promptly issue a revised decision." Id. at 2.

Despite the court's March 2017 recommendation that this matter be set for an expedited hearing within 120 days, and a prompt decision, another 16 months elapsed before the ALJ issued the third decision in this case, on July 18, 2018. (Tr. 1307-33.) In that July 2018 decision the ALJ acknowledged that Diaz had, in fact, been disabled a decade earlier in May of 2008 when he fell down an open elevator shaft. The ALJ also conceded that Diaz remained disabled until March of 2012, but denied his claim after March of 2012 reasoning that his condition had improved sufficiently after that date to allow him to perform a limited rate of sedentary work. In reaching this result, the ALJ erroneously set Diaz's date last insured as December 2013, and then declined to consider a treating source opinion which stated that Diaz remained disabled because that opinion was issued in 2015, after the erroneous date last insured identified by the ALJ. (Id.)

The Commissioner now concedes that this July 2018 ruling was also in error, but invites a further remand of this decision for a fourth administrative hearing.

However, when we consider this invitation solely in terms of the delay which has occurred to date, and the future delay we may anticipate given the history of this litigation, we find that the first element of Diaz's request for the award of benefits in lieu of a remand—excessive delay—is fully met here.[3]

Finding that this case has been plagued by excessive delay, we consider the next two issues we must address: Is the administrative record of the case fully developed and does substantial evidence on the record as a whole indicate that the claimant is disabled and entitled to benefits? Podedworny v. Harris, 745 F.2d 210, 221–22 (3d Cir. 1984). We answer both of these questions in the affirmative.

Turning first the consideration of the completeness of the administrative record, that record embraces 1,698 pages of material. Embedded within this voluminous administrative record are 120 pages of hearing testimony,[4] more than 750 pages of clinical treatment and other medical records,[5] and multiple opinions from treating, examining and non-examining consulting medical sources. The administrative record also contained an undisputed, and well-documented, finding

---

[3] Indeed, we are constrained to note that our research did not reveal and no party has cited any legal authority which would support the proposition that the passage of between 11 and 9 years from the onset of disability and the commencement of agency proceedings, during which 3 remands are required, is anything but an excessive delay.

[4] See Tr. 40-67, 649-69, 1346-1422.

[5] See Tr. 194-584, 889-1122, and 1577-1698.

by the ALJ that Diaz's impairments were so severe that from May 2008 through March 2012 he was deemed *per se* disabled. (Tr. 1307-33.)

Moreover, the medical record as it pertains to Diaz's condition after March 2012, when the ALJ found that he had regained the ability to perform some sedentary work, is also extensive and fully-developed. That record is comprised of comprehensive treatment records spanning from 2012 through 2016, along with at least five medical source statements from treating or examining sources detailing the severity of Diaz's impairments. Further, we note that, had there been any evidentiary deficit in Diaz's medical history, the ALJ certainly had the discretion to cure that shortcoming in 2017 or 2018 by ordering additional consultative examinations. The ALJ chose not to do so, and given the very comprehensive medical record that currently exists, we would not second guess this decision by the ALJ to forego further medical examinations prior to its third decision on this claim. Indeed, notably even as the Commissioner seeks a remand of this case, the agency does not identify for us any evidentiary gaps in the record which require further factual development. Therefore, we conclude that "the administrative record of the case has been fully developed." Eberhart v. Massanari, 172 F. Supp. 2d 589, 599 (M.D. Pa. 2001).

Finally, given this very complete administrative record we also conclude that "substantial evidence on the record as a whole indicates that the claimant is disabled

and entitled to benefits." <u>Podedworny v. Harris</u>, 745 F.2d 210, 221–22 (3d Cir. 1984). Accordingly, "it is unreasonable for a court to give the ALJ another opportunity to consider new evidence concerning the disability because the administrative proceeding would result only in further delay in the receipt of benefits." <u>Id.</u>

We reach this conclusion mindful of the Commissioner's admonition that "the district courts have no fact-finding role in Social Security cases." <u>Grant v. Shalala</u>, 989 F.2d 1332, 1338 (3d Cir. 1993). Yet, we also recognize that, as the Supreme Court has recently observed:

> § 405(g) states that a reviewing "court shall have power to enter, upon the pleadings and transcript of the record, a judgment affirming, modifying, or reversing the decision of the Commissioner of Social Security, with or without remanding the cause for a rehearing"—a broad grant of authority that reflects the high "degree of direct interaction between a federal court and an administrative agency" envisioned by § 405(g).

<u>Smith v. Berryhill</u>, 139 S. Ct. 1765, 1779 (2019).

When considering whether to exercise this "broad grant of authority" under §405(g) in favor of an award of benefits in lieu of a remand, for the past 35 years the clear guidance from the court of appeals has been that the court may award benefits "when the administrative record of the case has been fully developed and when substantial

evidence on the record as a whole indicates that the claimant is disabled and entitled to benefits." Podedworny v. Harris, 745 F.2d 210, 221–22 (3d Cir. 1984).

Here substantial evidence shows that Diaz is disabled and entitled to benefits. At the outset, Diaz's treating physician, Dr. Rubinfeld, has consistently opined that the plaintiff remains disabled, expressing that view most recently in March of 2015. Dr. Rubinfeld's opinion, in turn, is completely congruent with the reports of the plaintiff and his spouse, who both describe disabling levels of pain that are currently endured by Diaz. Moreover, no less than four consulting and examining sources who assessed Diaz between July 2012 and January 2014 and concluded that he was either totally or significantly disabled. Taken together this mutually corroborative and largely uncontradicted lay testimony and medical opinion evidence from five separate medical sources plainly constitutes "substantial evidence on the record as a whole [which] indicates that the claimant is disabled and entitled to benefits." Podedworny v. Harris, 745 F.2d 210, 221–22 (3d Cir. 1984).

Indeed, this quantum of proof falls squarely within the type and quality of evidence which, in the past, has warranted an award of benefits in lieu of a remand. For example, like Morales v. Apfel, supra, in this case the proof of on-going disability entailed an "extensive medical record, wrongly rejected by the ALJ." Morales v. Apfel, 225 F.3d 310, 320 (3d Cir. 2000). Likewise, in this case, as in

Nance v. Barnhart, supra, the proof of disability included treatment records, coupled with a treating source's opinions over several years, which indicated that the plaintiff is unable to maintain a normal, regular work schedule. Nance v. Barnhart, 194 F. Supp. 2d 302, 322 (D. Del. 2002). Further, the evidence in this case mirrors the proof in Brownawell v. Comm'r Of Soc. Sec., supra, where benefits were awarded after the claimant's "treating physician for over three years, twice opined that a finding of disability was justified." Brownawell v. Comm'r Of Soc. Sec., 554 F.3d 352, 358 (3d Cir. 2008). Finally, the proof in this case closely parallels the evidence in Woody v. Sec'y of Health & Human Servs., supra, where the court of appeals found that an award of benefits was proper after: "Eight years of administrative and judicial proceedings have produced a record in which the *uncontradicted* medical and lay evidence demonstrates that [the plaintiff] suffers from . . . a[n] impairment and that that impairment has had a devastating impact on his ability to function . . . ." Woody v. Sec'y of Health & Human Servs., 859 F.2d 1156, 1162 (3d Cir. 1988)(emphasis in original).

Moreover, an assessment of this third ALJ decision in Diaz's case strongly suggests that it is flawed in numerous ways which could not be remedied through remand. The Commissioner has conceded one such error, the erroneous reliance upon a 2013 date last insured to ignore Dr. Rubinfeld's March 2015 opinion that

Diaz was totally disabled. While this error, standing alone, could potentially be corrected on remand, we find that there are other shortcomings in this decision which are not equally amenable to correction through a remand. Indeed, in our view, the July 2018 ALJ decision was flawed in at least seven material ways which cannot be readily remedied on remand.

First, the decision rested upon an implausible premise. Accepting as we do the ALJ's conclusion that Diaz was *per se* disabled from May 2008 through March 14, 2012, the ALJ's ruling that beginning on March 15, 2012, Diaz was capable of working requires the court to accept that in a single day Diaz's medical condition transformed from totally disabling as a matter of law to permitting sedentary work. On the current record we simply cannot make this inferential leap.

Second, in reaching this conclusion, the ALJ's decision did not take into account that the burden of proof, both on the issue of continuing disability and on the question of disability at Step 5, rested squarely with the Commissioner. However, in assessing whether remand would be a meaningful exercise we must consider which party bears the burden of proof on remand. In this case, that burden must be carried by the Commissioner and we conclude that the existing evidence would not enable the Commissioner to meet this burden of proof.

Third, the ALJ's decision in this case ran afoul of a cardinal legal principle in this field, the treating physician rule. As we have observed:

> Under applicable regulations and the law of the Third Circuit, a treating medical source's opinions are generally entitled to controlling weight, or at least substantial weight. See, e.g., Fargnoli v. Massanari, 247 F.3d 34, 43 (3d Cir. 2001)(citing 20 CFR § 404.1527(c)(2); Cotter v. Harris, 642 F.2d 700, 704 (3d Cir. 1981)). Oftentimes referred to as the "treating physician rule", this principle is codified at 20 CFR 404.1527(c)(2), and is widely accepted in the Third Circuit. Mason v. Shalala, 994 F.2d 1058 (3d Cir. 1993); See also Dorf v. Bowen, 794 F.2d 896 (3d Cir. 1986). The regulations also address the weight to be given a treating source's opinion: "If we find that a treating source's opinion on the issue(s) of the nature and severity of your impairment(s) is well supported by medically acceptable clinical and laboratory diagnostic techniques and is not inconsistent with the other substantial evidence in your case, we will give it controlling weight." 20 CFR § 404.1527(c)(2). "A cardinal principle guiding disability, eligibility determinations is that the ALJ accord treating physicians' reports great weight, especially when their opinions reflect expert judgment based on continuing observation of the patient's condition over a prolonged period of time." Morales v. Apfel, 225 F.3d 310, 317 (3d Cir. 2000)(citations omitted); See also Brownawell v. Commissioner of Social Security, 554 F.3d 352, 355 (3d Cir. 2008). In choosing to reject the treating physician's assessment, an ALJ may not make "speculative inferences from medical reports and may reject a treating physician's opinion outright only on the basis of contradictory medical evidence and not due to his or her own credibility judgments, speculation, or lay opinion." Morales v. Apfel, supra at 317 .

Morder v. Colvin, No. 3:16-CV-213, 2016 WL 6191892, at *10 (M.D. Pa. Oct. 24, 2016). In this case, the ALJ's decision denying benefits to Diaz after March 2012 violated the treating physician rule and there was a particular lack of coherence to the evaluation and rejection of Dr. Rubinfeld's March 2015 treating source opinion.

Initially, as it related to opinions regarding Diaz's condition prior to March 2012, this treating source's opinions were afforded great weight by the ALJ. However, after March 2012, the ALJ held that Dr. Rubinfeld's treating source opinions were entitled to no weight whatsoever.

Fourth, as we have noted, the rationale for rejecting Dr. Rubinfeld's March 2015 opinion also violated the basic legal tenet that: "Where a conflict in the evidence exists, the ALJ may choose whom to credit but 'cannot reject evidence for no reason or the wrong reason.'" Plummer v. Apfel, 186 F.3d 422, 429 (3d Cir. 1999)(quoting Mason, 994 F.2d at 1066)); see also Morales v. Apfel, 225 F.3d 310, 317 (3d Cir. 2000). Here, the ALJ clearly rejected Dr. Rubinfeld's March 2015 medical opinion for the wrong reason, erroneously concluding that the opinion was meaningless because it was issued after Diaz's date last insured.

Fifth, the ALJ employed a suspect rationale in discounting the lay testimony of Mrs. Diaz regarding her husband's degree of disability. In this decision, the ALJ gave little weight to this testimony citing the witness' family relationship with the claimant. Yet, while familial ties and affinities may color a witness's perceptions, the statements of these witnesses should not be automatically discounted simply because they are related to a claimant. "To the contrary, testimony from lay witnesses who see the claimant every day is of particular value; such lay witnesses

will often be family members." <u>Smolen v. Chater,</u> 80 F.3d 1273, 1289 (9th Cir.1996). <u>See</u> <u>Markoch v. Colvin</u>, No. 3:14-CV-00780, 2015 WL 2374260, at *13 n.4 (M.D. Pa. May 18, 2015) <u>citing Smolen v. Chater,</u> 80 F.3d 1273, 1289 (9th Cir.1996); <u>Escardille v. Barnhart</u>, No. 02–2930, 2003 WL 21499999 (E.D.Pa. Jun.24, 2003) (noting that the ALJ improperly rejected testimony by a claimant's siblings because they had a vested interest in the claimant's finances); <u>Cowart v. Comm'r of Soc. Sec.</u>, 2010 WL 1257343 at *8–9 (E.D.Mich. Mar.30, 2010) (finding that the ALJ improperly imputed bias for lack of credibility based on a familial relationship).

Sixth, in addition to discounting the treating source opinion and the testimony of the lay witness who knew Diaz best, the ALJ's decision gave little weight to four consulting, examining sources who opined regarding the profound impairments experienced by Diaz since March of 2012. Moreover, having discounted all of these medical opinions, the ALJ then crafted an RFC for Diaz which was not based on any medical opinion evidence. In following this course and effectively discounting *all* medical opinions, the ALJ gave insufficient credence to the concept that "[r]arely can a decision be made regarding a claimant's residual functional capacity without an assessment from a physician regarding the functional abilities of the claimant." <u>Biller v. Acting Comm'r of Soc. Sec.</u>, 962 F. Supp. 2d 761, 778–79 (W.D. Pa. 2013)

(quoting <u>Gormont v. Astrue</u>, Civ. No. 11–2145, 2013 WL 791455 at *7 (M.D. Pa. Mar. 4, 2013)).

Seventh, and finally, the primary evidentiary premise for this ALJ decision collapses under close scrutiny. In this July 2018 decision, the ALJ justified discounting all of this evidence because: "Dr. Rubinfeld's treatment records revealed from March 2012 to December 2013, the physical examination findings were essentially within normal limits." (Tr. 1326.) However, we find that these treatment records do not reveal results that were essentially within normal limits. Quite the contrary, these records described Diaz's back pain as a recurring problem; characterized the severity of this pain as ranging between moderate, moderate-to-severe, and severe; and assessed Diaz's functional impairment as falling between moderate and severe. (Tr. 1060-1117.) In short, nothing about these treatment records seems to be at all normal. Rather they reflect a chronic level of impairment that varies between moderate and severe. These findings, in turn, were consistent with Dr. Rubinfeld's treatment notes, which also documented Diaz's on-going severe spinal pain. (Tr.1577-1658.) Furthermore, these clinical records corroborated Dr. Rubinfeld's numerous notations between 2014 and 2016 that Diaz was not able to return to work. (Tr. 1659-79.) Therefore, the last factual underpinning for the

ALJ's July 2018 decision—the assertion that Diaz's treatment record contained essentially normal findings—also fails.

In sum, when considered in combination these seven flaws in the latest ALJ decision in Diaz's case simply are not amenable to correction through remand. Accordingly, we find that it would be "unreasonable for a court to give the ALJ another opportunity to consider new evidence concerning the disability because the administrative proceeding would result only in further delay in the receipt of benefits." Podedworny v. Harris, 745 F.2d 210, 221–22 (3d Cir. 1984). Yet, while on these facts a decision to remand this case would inevitably add significant delay to a decade-old administrative process and result in substantial prejudice to Diaz, an award of benefits at this time does not forever prejudice the Commissioner. If the Commissioner concludes that Diaz's medical condition has improved sufficiently to allow him to return to the work force, the agency is not without recourse in this case. The Commissioner could always pursue administrative action seeking to terminate those benefits, subject to judicial review by the courts. See generally Early v. Heckler, 743 F.2d 1002, 1003 (3d Cir. 1984). Therefore, consideration of the potential prejudice to either party that may result from a decision regarding whether to award benefits in this case also weighs in favor of Diaz, since denying the plaintiff benefits after ten years of litigation may result in great prejudice, but granting

benefits at this time does not prevent the Commissioner from carrying its burden of proof on the issue of Diaz's medical improvement in another proceeding in the future.

## IV.   <u>Conclusion</u>

While we are mindful of the importance of deference to agency decision-making, we recognize that finality and fairness are cardinal virtues of our legal system, virtues which may on occasion call upon us to forego deference when prolonged agency litigation has led to what are admittedly flawed outcomes and a claimant's entitlement to relief is clear.

So it is in the instant case. We find that it is now time for this painfully prolonged litigation to draw to a close. Concluding that the exacting requirements set by law or an award of benefits are met under the extraordinary circumstances of this case, it will be ordered that judgment be entered in favor of the plaintiff and the Commissioner be directed to award benefits in this case.

An appropriate form of order follows.[6]

/s/ *Martin C. Carlson*
Martin C. Carlson
United States Magistrate Judge

Dated: July 3, 2019

---

[6] While we reach this result, we close by commending all counsel for the skill of their advocacy. In particular, for plaintiff's counsel this litigation has been a testament to both persistence and passionate advocacy, qualities that mark the highest ideals of our profession. Likewise, as the representative of a government agency, Commissioner's counsel displayed strong advocacy skills under challenging circumstances, coupled with commendable candor to the tribunal during oral argument.